Joseph A. Suozzi, J.
By this action, brought pursuant to section 51 of the General Municipal Law, plaintiff seeks (1) a declaration that the 1964^65 assessment roll of Nassau County is illegal and void, and (2) a direction that all land, unimproved and improved, exclusive of improvements, be assessed on the basis of the same current land value maps.
This action is not a proceeding to review any or all of the actual assessments. It is instead a direct attack on the roll itself, which plaintiff claims is invalid because the method used in its preparation violates certain statutory provisions of the Beal Property Tax Law and the Nassau County Government Law (L. 1936, ch. 879, as amd.).
The alleged invalidity of the proposed 1964-65 tax roll arises from the claim that in its preparation, pursuant to four resolutions adopted by the defendant, all vacant land, except land which was (1) used as a golf course, (2) contiguous to and forming part of a homestead, and (3) substandard in size for building purposes, was reassessed at one third of the current market value as established by a 1964 Current Market Value Land Map, whereas all improved land, exclusive of the improvements, and the vacant land in the three excluded categories, was assessed at 100% of the value shown on the 1989 Land Value Maps.
Plaintiff offered in evidence 14 exhibits and the testimony of its president and that of the Chief Clerk of the Department of Assessment. By Exhibits 1, 2 and 14, plaintiff’s deed, 1964 town tax bill and certificate of incorporation, plaintiff qualified itself as a taxpayer authorized to bring- this action.
Certified copies of the four resolutions were offered as Exhibits 3A, B, O and D. The other exhibits included a portion of the *187 Nassau County Land and Tax Map; a portion of the 1964 Current Market Value Land Map prepared by Joseph J. Blake & Associates, Inc., for the county and the corresponding Land Value Schedule; a duplicate of the 1963-64 assessment roll and a duplicate of the tentative 1964-65 assessment roll, all of which related to Section 48, Block 161; a copy of the Land and Tax Map and a duplicate of the tentative 1964-65 assessment roll, both of which related to Section 32, Block 358; a certification of the tentative 1964-65 assessment for the Rockville County Club, a portion of the Current Market Value Land Map and the corresponding Land Value Schedule, also relating to the Rockville Country Club. All of these exhibits were offered to illustrate the method used in preparing the roll, and the varying effects of the method used. The court reserved decision on all objections raised by defendant as to these exhibits.
The defendant’s case consisted of a request to the court to take judicial notice of (1) certain equalization rates; (2) court procedures in tax certiorari cases; (3) an expert’s testimony in Matter of Mid-Island Shopping Plaza v. Podeyn (25 Misc 2d 972, affd. 14 A D 2d 571, affd. 10 N Y 2d 966) relating to the ratio of assessed value to current market value in Nassau County; (4) the change in land values in Nassau County since 1939; and (5) the fact that town tax bills list only the total assessed value of the assessed parcel. The defendant thereupon moved for dismissal of the complaint and for judgment on the merits and on several other grounds, which the court will consider at the outset.
The first of these grounds is that methods used by assessors in determining assessments are not judicially reviewable. However, the cases which have so held have all involved proceedings to review actual valuations. (See People ex rel. Rome, Water-town & Ogdensburgh R. R. Co. v. Haupt, 104 N. Y. 377, 381; People ex rel. Haile v. Brundage, 195 App. Div. 745; Matter of Bell Aircraft Corp. v. Board of Assessors of City of Buffalo, 204 Misc. 951; Lee and Le Forestier, Review and Reduction of Real Property Assessments (1960), § 700 et seq.) “ The test ” in such proceedings, as stated in Matter of Bell Aircraft Gorp. v. Board of Assessors of City of Buff alo (supra, p. 953), “ is not the formula used but the fairness and reasonableness of the board’s conclusion. The result, not the method, is controlling.”
In refusing a review of the assessor’s methods in such cases, the courts have made it quite clear that it was the assessors ’ mental processes, observations and judgments which were in back of the actual valuations, which were not the proper subjects of judicial scrutiny. This action is clearly distinguishable. It *188 does not seek a review of any actual valuations, but attacks instead the method used in the preparation of the roll. A review of the method here does not necessitate an inquiry into the assessor’s mental processes, judgment and observations, since that method is candidly and forthrightly stated in the four resolutions offered as evidence.
The second ground is founded on a charge that the plaintiff brings this action in bad faith. This charge is based on the proof which shows that the plaintiff’s president was not a corporate stockholder and was elected as president simultaneously with the retention of counsel for this action, and that plaintiff owns no vacant property and can therefore derive no benefit by this lawsuit. This is an action to restrain allegedly illegal acts and public waste which, if proven, ought to be restrained irrespective of a plaintiff’s motives or reasons for bringing the action (Mechtold v. Tilford, 205 Misc. 1063; Clinton v. Myers, 46 N. Y. 511, 520). It is therefore unnecessary to rule on the plaintiff’s motives.
Defendant’s third ground is a repetition of the challenge as to the procedural propriety of this action, which was rejected on the motion to dismiss before trial. Defendant contends that the plaintiff’s remedy is exclusively by an article 7 of the Real Property Tax Law; (certiorari) or an article 78 CPLR proceeding.
The Court of Appeals as early as 1893, in an equitable action where a similar contention was made, stated that certiorari was not applicable where ‘ ‘ the whole assessment roll is claimed to be illegal and void. It applies only to cases where there is a valid assessment roll in which a person has been for some reason been illegally assessed, or where the assessment is excessive or unjust. (People ex rel., etc. v. Parker, 117 N. Y. 86.) ” (Van Deventer v. Long Is. City, 139 N. Y. 133, 137.) (See People ex rel. Hoestery v. Taylor, 210 App. Div. 196.)
The fact that the plaintiff may have the right as a taxpayer to bring an article 78 proceeding without showing a personal grievance or a personal interest in the outcome (Matter of Policemen’s Benevolent Assn, of Westchester County v. Board of Trustees of Vil. of Croton-on-Hudson, 21A D "2d 693 [2d Dept.]), does not deprive him of the right to maintain this action. In any event, Mr. Justice Velsob,’s decision denying the motion to dismiss, wherein he stated that “ The essential elements upon which a taxpayer ’ s action may be brought under General Municipal Law, section 51, have been pleaded against the board, namely, official acts which are illegal * * * and which will result in injury ” (C.H.O. B. v. Board of Assessors, N. Y. L. J., *189 April 21, 1964, p. 18, col. 4) is dispositive of this challenge. Although the defendant has filed a notice of appeal from the order entered on this decision, the appeal has not been pursued.
For these reasons the court denies defendant’s motion for dismissal and for judgment on these grounds, and proceeds to the consideration of the merits of plaintiff’s challenge to the roll, which raises questions of great public importance which should be decided. The court at the outset overrules the objections to the admission of plaintiff’s exhibits on which decision was reserved.
In this court’s view, the holding of Mr. Justice Velsor on the motion to dismiss before trial represents the law of the case only insofar as the propriety of the remedy is concerned. All that it established was that the complaint was sufficient as a pleading to withstand attack by motion. The determination of the issues in this action is for the trier of the facts by final judgment (Levitt v. Incorporated Vil. of Sands Point, 6 A D 2d 701; Bannon v. Bannon, 270 N. Y. 484).
Section 51 of the General Municipal Law provides that a qualified taxpayer may maintain an action to prevent illegal official acts or to prevent injury or waste. The plaintiff has prosecuted this action on the premise that the defendant has acted illegally, that is, contrary to and in violation of section 306 and subdivision 3 of section 502 of the Beal Property Tax Law and section 603 of the Nassau County Government Law, in preparing this roll, and that if this roll is permitted to stand, there will be public waste and injury resulting therefrom. 'The court addresses itself first to the 'Search for the illegalities claimed.
There is no dispute that until this year, all land in the county, that is, land in vacant parcels and land (exclusive of improvements) in improved parcels was assessed at 100% of the values shown on the Land Value Maps adopted in 1939. The total assessed valuation of improved parcels was reached by adding on to the land valuations a valuation for any buildings or improvements. There is no dispute, either, that these land values (as shown on the maps) do not reflect present-day values and bear no relationship to the current market values of land. In the face of the tremendous changes that land values have undergone in the county, the map values were maintained consciously at substantially the level of 1939 land market values. By these procedures, namely, (1) consciously maintaining the land value map values at the 1939 level, and (2) by valuing all land uniformly at 100% of these values, the County Assessors *190 strove conscientiously and diligently to treat all taxpayers equally and uniformly and to equalize the tax burden among all assessable properties.
The assessed valuations of the assessable properties produced by this process were purported to he at a uniform ratio to market values in two respects: (1) the assessed valuations of land in the vacant parcels and the assessed valuations of the land alone in the improved parcels were maintained at the same ratio to their respective market values, and (2) the total assessed valuations of improved parcels (both land and building valuations), were at the same ratio to their respective market values. It was generally accepted that the prevailing ratio in Nassau County was somewhere between 30% and 50% (Howard T. Hogan, “ Judicial Review of Real Estate Tax Assessments ”, Nassau Lawyer, Jan. 1963, p. 9). In Matter of Mid-Island Shopping Plaza v. Podeyn (25 Misc 2d 972, affd. 14 A D 2d 571, affd. 10 N Y 2d 966, supra), for the limited applicability to that proceeding, Mr. Justice Hogaít found the ratio to be 35.88%.
As vacant land parcels became scarcer and their market values soared higher, it became increasingly evident that the ratio of the assessed valuations of vacant land parcels to their current market values bore less and less correspondence or uniformity with the ratio of the total assessed valuations of improved parcels to their current market values.
It is evident from the resolutions adopted by the defendant that it was alerted to these changing ratios by sampling studies made as to ratio of assessment to full or market value “ of improved residential properties ” and “ of unimproved or vacant land ”. These studies indicated a uniformity of assessment in relation to market value of improved properties, but indicated a lack of uniformity in the relationship of assessment to market value in the ease of vacant land. An additional indication was that the ratio of assessment to market value in the case of vacant parcels was considerably less than the assessment ratio prevailing for improved residential properties, which apparently was found to he 33%%.
While the court does not accept the recitals in the resolutions as proof of the studies or of their sufficiency, or of the validity or accuracy of the findings, or that the ratio of 33%% is the prevailing ratio for improved residential properties, they at least suggest the rationale for the action taken by the defendant. In the absence of proof to the contrary, the court can reasonably assume that the defendant has acted in good faith in reliance on these studies. These findings, if true, point to the *191 inequality which the resolutions obviously were designed to remedy.
The defendant, in the preparation of this roll, first determined the current market value of the remaining vacant parcels in this county, on the basis of the Current Market Land Value Maps and the corresponding schedules prepared by Joseph J. Blake & Associates, and then fixed the assessed valuations of these parcels at one third of current market value. This has resulted in an increase in the assessed valuation of most vacant parcels in the county. However, in the case of improved parcels and the vacant parcels in the three excluded categories, the defendant continued the practice of prior years in assessing these parcels at 100% of the values as shown on the 1939 Land Value Maps.
It is this dual approach in the assessment of all vacant land generally and in the assessment of land in improved parcels, and the results thereof, to which the plaintiff objects, and which it asserts as the principal basis for the alleged illegality of this roll. The plaintiff also challenges the legality of the distinction made between the land in the vacant parcels in the three excluded categories and in all other vacant parcels. Each of these challenges will be considered separately.
By this dual approach the defendant has sought to achieve in the assessment of vacant parcels the same ratio to market value that is claimed to prevail in the total assessments of improved parcels, to wit, 33%%. In this way it seeks to spread the tax burden equally and equitably among all the assessable properties in the county.
In seeking to achieve this result the defendant has not been concerned with, and has made no pretense of achieving any uniformity in the ratio of assessments to market value insofar as the valuation of land alone is concerned. It is extremely doubtful that any such uniformity can be found in this roll. Plaintiff insists that it is this lack of uniformity in the ratio of assessments of all land, vacant and improved, to that land’s market value that invalidates this method and the roll prepared pursuant thereto.
It is on this narrow and limited ground that the plaintiff' principally bases its demand that this roll be declared invalid and illegal. In the plaintiff’s view, uniformity in the ratio of assessment of land alone (and this includes improved as well as unimproved land) to the land’s market value should and must he achieved.
In seeking this judgment plaintiff relies on section 306 and subdivision 3 of section 502 of the Beal Property Tax Law *192 and section 603 of the Nassau County Government Law for the statutory foundation for this claimed illegality.
Section 306 provides that all real property shall be assessed at full value thereof. Although full value has been held to be synonymous with market value (People ex rel. Parhlin Operating Corp. v. Miller, 287 N. Y. 126), the courts have uniformly held that this section does not mandate assessments at 100% of full or market value. It requires merely that the assessments be at a uniform rate or percentage of full or market value for every type of property in the assessing unit (Matter of Mid-Island Shopping Plaza v. Podeyn, supra; Matter of Hartley Holding Corp. v. Gabel, 13 N Y 2d 306; People ex rel. Yaras v. Kinnaw, 303 N. Y. 224). The Legislature through subdivision 3 of section 720 of the Beal Property Tax Law has acknowledged and apparently sanction this State-wide practice.
The statutory mission as enjoined by section 306 and interpreted by the courts is achieved, in this court’s view, if the total assessed valuation of each assessable parcel within the county is maintained at a uniform ratio of full or market value (Mid-Island Shopping Plaza v. Podeyn, supra). Whether or not this has actually been achieved by the defendant in this roll the court is not asked to pass on, because it is the method which is attacked, not the valuations. It is sufficient for the purposes of this action to pass on Avhether this result can be achieved by this method.
Without denying or admitting that this method can achieve this result, the plaintiff claims that the roll is invalid even if it does achieve it. For it is the plaintiff’s contention that this mission is qualified and restricted by .subdivision 3 of section 502 of the Beal Property Tax Law and by section 603 of the Nassau County Government Law, which provide as follows:
“ The assessment roll shall contain a column for the entry with respect to each separately assessed parcel of the assessed valuation of the land exclusive of any improvements, followed by a column for the entry of the total assessed valuation. Only the total assessment, however, shall be subject to judicial review provided by article seven of this chapter.” (§ 502, subd. 3.)
‘1 Bules and regulations. It shall be the duty of the board of assessors to adopt such rules and regulations for the guidance of its deputy assessors in the performance of their duties as will establish an equitable and scientific system of assessing property for taxation. Such system shall provide for recording separately the value of each parcel of land and the value of any building or structure thereon ” (§ 603.)
*193 Plaintiff’s reliance on these provisions evidences the weakness of its attack on this roll. These requirements as to the form of the roll are directory (Lancaster Sea Beach Improvement Co. v. City of New York, 214 N. Y. 1; Matter of Doughty v. Loomis, 9 A D 2d 574), and to construe them as a mandate as to how the amount to be recorded should be determined is to misconstrue them. (Matter of Doughty v. Loomis, supra.)
A declaration of illegality such as the plaintiff seeks here demands a much firmer base than the fiction that land in an improved parcel has a market value distinct and separate from the improvements thereon. By providing that it was only the total assessment which could be judicially reviewed (Beal Property Tax Law § 502, subd 3), the Legislature apparently recognized the fiction underlying these requirements, and that an improved parcel’s actual value relates to the whole and not to the separate ingredients of land and improvements.
Any separation of value for land and buildings is purely artificial and hypothetical. Professor James C. Bonbright made the following relevant comment on the statutory requirements for the separate recording of land and building values in ‘ ‘ The Valuation of Property, A Treatise on the Appraisal of Property for Different Legal Purposes ” (vol. 1, p. 485):
‘ ‘ Although a separate valuation of land and of improvements is called for by many of the statutes as well as by the practice of assessors, the fictitious nature of this separation is apparent. One simply cannot find the value, say, of the Stevens Hotel property in Chicago or of Mr. Schwab’s residence in New York by adding the value of the ground devoid of the building, to the value of the building devoid of the ground. The attempt to do so would result in the same error that would be committed were we to seek the value of Baphael’s Sistine Madonna by adding the separate value of the lower half of the canvas to the separate value of the upper half.
“ In reality, however, what the separate appraisal of the two portions of the property attempts to portray is, first, what the land would be worth on the fictitious assumption that it is vacant, and second, how much more than this figure the entire property is worth because improvements have been erected on the land. When an assessor submits a report on ‘ the value of the building ’ he is therefore at best presenting an estimate of the extra value of the whole property over its hypothetical vacant-land value. This procedure may be defensible in the extremely crude appraisals that are necessary under a real-estate tax, because it permits the use of mechanical formulas *194 that would be unavailable if a more direct estimate of the property in its entirety were attempted.
‘1 But the use of these mechanical formulas for the purpose of deriving the added value contributed by the building involves an inference, which is never strictly valid and often wildly wrong ’ ’.
The procedure by which the appraiser arrives at a total assessed valuation of an improved parcel, which the plaintiff claims is now disregarded by the defendant’s new procedure, is really of no great moment since the procedure is just so much more fiction built on fiction. The interpretation urged by the plaintiff presupposes that land which has been improved and committed to use should be valued and assessed in the same manner and on the same basis as land which is vacant, but the plaintiff has produced no proof by way of any expert testimony to provide a factual basis for this hypothesis. Neither is there any proof in this record to demonstrate that the value of improved land, if it has a separate value, has increased at the same rate as that of vacant land, and that this increase has kept-pace with the continuing increase in the value of vacant land as such parcels became scarcer in this county.
To the suggestion that there is proof of this in the current market value land maps which purport to show the values of all land in the county, the answer can be made that the resolutions themselves limit the applicability and reliance of the defendant on these values only to the vacant parcels.
Mr. Justice Hogan of this court, who for the past five years has presided by designation of the Appellate Division over all matters relating to the condemnation of land and the review of real estate taxes and assessments in this county, in two recent opinions passed on this very question of the market value of vacant and improved land. Relevant portions of these decisions are quoted here.
In Matter of Cross-Properties v. Board of Assessors of County of Nassau (N. Y. L. J., Sept. 24, 1963, p. 15, cols. 3, 5) Judge Hogan stated: “ [The Court] agrees with this witness that the land, because it is encumbered with relatively old buildings, does not have a value comparable to that of vacant land in the surrounding area, and that it represents only 20% of the value of the whole property. ’ ’ In the proceeding in Matter of Cedar Park Terr. v. Board of Assessors of County of Nassau, (N. Y. L. J., June 17,1964, p. 16, col. 7), it was stated: “ ‘ It is quite clear that no special premium may under the law be added to the value of the land solely because that land has been improved bv an ade *195 quate structure ’ [People ex rel. Empire State Building Corporation v. Boyland, 1 Misc. 2d 518, 523, aff’d 1 App. Div. 2d 770, aff’d 5 N. Y. 2d 715], This court has reached the conclusion, however, that the value of land may be diminished by the nature of the improvement placed upon it. The market value of vacant land normally is based upon its potential, which can be completely realized only when the highest and best improvement is added to it. In the case of land which may be used for the production of income, its possibilities will be fully exploited only by an improvement which will permit the maximum net yield. Anything less constitutes, to some degree, a burden on the land in that it prevents the achievement of its full earning capacity. Thus vacant land potentially may be worth more than land so burdened. The purchaser of investment property ordinarily does not place one value on the land and another on the buildings, nor does he attempt to allocate a portion of the income to the land and the balance to the buildings * * * for his purpose they are inseparable. What affects one affects the other. * * * It would be unrealistic to value its underlying land on the same basis as vacant land or land more adequately improved.” Plaintiff would have this court invalidate the roll because of its failure to maintain a uniformity in the ratio between the assessments of land and the land’s market value. Although it is claimed that by the prior practice there was achieved in the land assessments, both vacant and improved, a uniform ratio to market value, it is extremely doubtful that this can be demonstrated. The uniformity claimed to have been achieved in the prior rolls, by the prior practice, has always been purportedly achieved and measured in terms of fictional 1939 values. Neither its relevancy nor the benefit denied to taxpayers because of a lack of this uniformity has been demonstrated. The fact that this uniformity is irrelevant and immaterial is suggested in this language from People ex rel. Harway Improvement Go. v. Berry (229 App. Div. 565, 566-567), which was concerned with subdivision 3 of section 21 of the Tax Law, the predecessor to subdivision 3 of section 502 of the Real Property Tax Law:
“ There is, however, in subdivision 3 a sentence which limits the effect of these valuations and the review of them. It reads: ‘ The total assessment only can be reviewed.’ * * * It has been stated in the concurring opinion of Pound, J., in People ex rel. Strong v. Hart (216 N. Y. 513, 521): 1 The total assessment should equal the full value of the real property, whether the land, exclusive of the buildings, is valued separately as provided by section 21-a or not. There is but one 1 ‘ full value ’ ’, which should be the same by whatever method determined. ’ And the foregoing *196 met concurrence in the dissenting opinion of Seabuky, J. (at p. 525): ‘ The court is required to review the total assessment only, so that if the land has been assessed by the assessors at too much and the buildings at too little or the land at too little and buildings at too much, both assessments can be corrected at the same time and in the same proceeding.’
“In other words, the assessment roll may contain two valuations, hut there is only one assessment; and, if the total assessment is legal, it is not important whether the land is valued too high or the improvements too low, or vice versa, provided the total assessment is not excessive.” (Emphasis supplied.)
A remedy is provided by article 7 of the Real Property Tax Law to an aggrieved taxpayer to correct any overvaluation or inequality in his assessment. In determining whether a taxpayer has a redressable grievance for overvaluation, the only pertinent assessment is his own, and his success in establishing a grievance does not depend on his comparing his land’s assessment with that of his neighbors or of similar parcels. (People ex rel. Yaras v. Kinnaw, 303 N. Y. 224, supra; Matter of Wolf v. Assessors of Town of Hanover, 308 N. Y. 416.) In a case of alleged inequality an aggrieved owner of vacant land whose assessment has been increased must show, in order to be successful, that the ratio of his new assessed valuation to current market value was greater than the ratio prevailing for other and comparable properties (Matter of Mid-Island Shopping Plaza v. Podeyn, supra). If. the defendant has succeeded in achieving the prevailing ratio in the aggrieved taxpayer’s valuation, the taxpayer cannot be heard to complain.
The opportunity to compare land values which has been denied to the taxpayer in each of these proceedings has not limited his opportunity for success in these proceedings. The relevancy and significance of this ratio which plaintiff deems so essential continues to elude this court. If an aggrieved taxpayer cannot be heard to complain about his assessment, by whatever method such assessment may have been determined, it is difficult to find any merit in the plaintiff’s position.
Neither the plain language of the provisions relied upon by the plaintiff, nor their intent as revealed by the judicial expressions which they have prompted, nor the treatises which have commented on these or similar provisions, provide any basis for the construction or conclusion which is urged upon the court by the plaintiff and on which the plaintiff primarily relies for relief in this action.
The sanction of the law in requiring a separation of land and building values and the experience of .so many years’ practice *197 in doing it have not transformed or converted this separation from its basically hypothetical conception into a substantive creature of the assessment process. Therefore the court finds no reason by which it can, should or must be controlled or compelled because of it to nullify an assessment roll on which so much and so many depend. The court cannot find that any of the statutory provisions referred to have been contravened, or that because of the method employed by the defendant the tax roll must be declared illegal.
If the court needed any additional demonstration of the invalidity of plaintiff’s contention, it need look no further than plaintiff’s own proposal as to how this roll can be validated and legalized. In the search for this “ absent ” ratio between the land assessments and land market values, the plaintiff suggests changing the valuations for land in the 380,000 parcels which have not been reassessed to 33%% of the market value as shown on the current market value land maps. In this way the uniformity deemed by the plaintiff to be so essential to the legality of the roll would be achieved.
In order to maintain the total assessed valuations for these parcels at the same level, assuming for the moment that they are at one third of market value now, the valuations for buildings must be reduced arbitrarily so that the total of the new land valuations and the reduced building valuations do not exceed the present total assessed valuations. Unless this is done, the risk is run of violating the constitutional prohibition against assessing real property in excess of full value (N. Y. Const., art XVI, §2).
To follow plaintiff’s suggestion would result, in the final analysis, in the same total assessed valuation on the roll; the amount of taxes to be collected would be the same, from the same taxpayers. The magnitude of accomplishing this reassessment in accordance with the plaintiff’s proposal is obvious, and it could not possibly be accomplished in time to collect next year’s taxes, even if the court extended the time to prepare the roll. To direct a reassessment of some 380,000 parcels, as plaintiff seeks, for the sake of a pseudo-uniformity in a ratio whose relevancy and usefulness has not been established or demonstrated, seems a pointless, wasteful and unnecessary thing to do at this time. It would seem that the defendant has chosen a more practical and less expensive procedure to accomplish the same result by dealing directly with the 20,000 or so parcels involved.
By this the court does not intend to suggest and does not find that there is no need for a complete review of all of the assessments in this county, or that it might not be a good thing to do. *198 In this proceeding, in which the plaintiff challenges the method and not the valuations, the need for a complete reassessment is not in issue. Whether there is such a need cannot be determined from the state of the evidence before this court. Obviously, by their reassessment of vacant land, the defendant has indicated the need for at least a total review of the assessed valuations of all vacant land. Whether or not this is part of or the beginning of a review of all the assessed valuations is not disclosed in this record.
It would appear to the court that notwithstanding the use of a dual approach in valuing vacant land and improved land exclusive of improvements generally, the defendant is on a valid route to achieving the statutory mission enjoined upon it by the tax statute. If by this method the defendant can actually achieve this equality of assessment, then there would not be inherent in the roll the preferential treatment of improved parcels and the discrimination against vacant parcels as claimed by the plaintiff. 1 ‘ Unformity for the purpose of attaining equality in assessment ”, in the view of Professor Bonbright, “ does not require unvarying treatment of all the different categories of property. Indeed true uniformity is inconsistent with such inflexibility. Uniformity does not require anything more than the treatment alike of things alike.” (Bonbrig*ht, Valuation of Property, supra, p. 499.)
Assuming for the moment that the court could by a strained interpretation find a basis for illegality, the evidence does not establish the prerequisite waste or injury to the public which would entitle the plaintiff to relief. The waste or injury to be restrained must flow directly from illegal official acts, and not from a plaintiff’s success in proving illegality in a lawsuit. As stated in Western N. Y. Water Co. v. City of Buffalo (242 N. Y. 202, 206-207): “ Mere illegality is not enough. The very nature and purpose of a taxpayer’s action like the present one presume that there will be more than illegality in order to enable him to intervene. The basic theory of such an action is that the illegal action is in some way injurious to municipal and public interests and that if permitted to continue it will in some manner result in increased burdens upon and dangers and disadvantages to the municipality and to the interests represented by it and so to those who are taxpayers. It was not the intention of the statute that a taxpayer shall be allowed to intervene and bring to the decision of the courts every act of a municipal officer which may be claimed to be illegal although concededly it is entirely innocuous.”
*199 The -second of the plaintiff’s challenges to the roll, which the court will now consider, is the distinction made in the resolutions between the vacant parcels in three enumerated categories and all other vacant parcels.
The resolutions provide that in making a determination of the current market value of vacant land, consideration should be given to several special factors which are listed in the resolutions. Whether or not, after considering these special factors, the land in the three categories should be valued at less than other comparable vacant land is not for this court to pass on, since there has been no proof offered on either side. Therefore in this case, in view of the state of the proof, the court cannot determine whether or not the actual assessed valuations for these categories of vacant land are at a lesser percentage to full value than the ratio of 33%% which it is claimed that the assessed valuations of other vacant land have to the market value of this land.
In this action the court is asked to assume that the treatment afforded to the vacant land in these categories has resulted in the evaluation of the land in these categories at a lower ratio than other vacant parcels. Assuming for the purpose of this decision that this is the case, the question posed to the court is whether this omission or exclusion by design of the properties in these three categories from the reassessment of vacant parcels is of itself sufficient cause to invalidate this roll.
In Van Deventer v. Long Is. City (139 N. Y. 133, supra) a taxpayer sought a cancellation of taxes levied against his property for 11 years because, he alleged, the taxes were illegally imposed. The basis for the illegality was that a large quantity of real property had been intentionally omitted from the assessment rolls for each of these years, and as a result the plaintiff’s taxes were higher than they might otherwise have been if the omitted property had been assessed. The Court of Appeals was faced with this question (p. 136): “ Was the entire assessment in each of the years mentioned absolutely illegal and void so that any person assessed can assail it and thus defeat the collection of the tax imposed upon him or his property because some real estate liable to taxation was omitted from the assessment roll? ” The court answered as follows (pp. 136-137): “ If we were obliged to answer this question in the affirmative a Pandora box of litigation would be opened and scarcely any taxation for governmental purposes could be upheld. Fortunately, upon principle and authority, the question can be answered in the negative. * * * We think there are fundamental reasons *200 for defeating this action which have not yet received attention. The assessors in making the assessments acted judicially, and if they omitted cmy property from the assessment rolls, either by mistake or design, the entire assessments are not thereby rendered invalid. An assessment roll is in the nature of a judgment, and it was never heard that a judgment rendered by an officer exercising judicial functions was void because by mistake or design he had made it too large or too small, in a case where he had jurisdiction, and acted within his jurisdiction.” (Emphasis supplied.)
The principles stated and the views expressed in the Van Deventer case and in the case of Dillingham v. Snow (5 Mass. 547) apply with equal pertinency and effect to the case at hand. For this reason the court cannot and will not invalidate this roll because of the omission or exclusion from the reassessment of vacant land of these three categories of vacant land.
In holding here that the 1964-65 tax roll is not illegal, the court does not, however, decide that the plaintiff is without remedy as held by the Van Deventer case, but merely that this plaintiff’s remedy is not by a declaration of illegality in this taxpayer’s action prosecuted pursuant to section 51 of the General Municiphl Law. If it can be established that the defendant has failed to assess the vacant land in these three categories at the uniform prevailing ratio, the remedy may lie in an article 7 proceeding by any person ‘ ‘ claiming to be aggrieved by any assessment of real property ”. (§ 704.) While there may be some doubt as to the right of the plaintiff to bring an article 7 proceeding to review the reassessment of vacant land generally, since the plaintiff is not aggrieved thereby, this doubt does not extend to the plaintiff’s right to pursue this remedy to review the assessments of land in these three categories if it can be established that its burden of taxation has been increased by reason of the defendant’s acts herein. (See People ex rel. Hoesterey v. Taylor, 239 N. Y. 626, supra.) Nor is the plaintiff precluded by the holding of this case from proceeding by an article 78 proceeding to compel the defendant to assess these properties at the prevailing uniform ratio to market value, if the defendant has not already done so. (Matter of Policemen’s Benevolent Assn, of Westchester County v. Board of Trustees of Vil. of Croton-on-Hudson, 21 A D 2d 693, supra.)
Accordingly, the court having held that the 1964-65 tax roll is not illegal either by reason of the method used in its preparation or by reason of the exclusion of the three enumerated *201 categories of vacant land from reassessment, the defendant’s motion for dismissal of the complaint and for judgment is granted.
In questioning ‘ ‘ how ’ ’ the assessed valuations of land wore determined, the plaintiff, and for that matter any taxpayer who disagrees with the defendant’s procedure, may actually be questioning “why” vacant and unused land, which demands and needs no major municipal services at public expense, and creates no additional tax burden, should be taxed at the same rate as improved properties. This latter question involves an inquiry into the philosophy of the real property tax and not into the legality of the tax, which would more properly be directed to those who are in a position to reform the system of taxation, and not to this court or to the assessing officials, who are enjoined to assess all property, vacant or improved, at full or market value.
Although the plaintiff has not succeeded in this court in challenging this roll and the defendant’s procedures, it has nonetheless rendered a good service. The plaintiff has compelled a look at the rationalization of our assessment procedures. This may serve to call attention to the fact that tax statutes which ‘ ‘ could have been expected to keep pace with the advance of appraisal techniques have instead * * * become anti-
quated and inequitable ” (Howard T. Hogan, “ Judicial Review of Real Estate Tax Assessments ”, supra, p. 11), and to demonstrate the aptness of the observation that “No amount of tinkering with the principles of assessment can remove the fundamental defects of the general property tax. Indeed it is necessary to catch at straws in order to justify any one basis of assessment as preferable to any other basis.” (1 Bonbright, Valuation of Property, p. 460.)