Joseph A. Suozzi, J.
In this action for a declaratory judgment that the assessment procedures of Nassau County violate section 306 of the Real Property Tax Law and the pertinent provisions of the United States and New York State Constitutions, the defendant Board of Assessors has moved to dismiss the action on the following grounds:
1. That the issues raised herein have been previously raised and determined by the courts of this State, including the Appellate Division of this Department and the Court of Appeals; and
2. That the plaintiffs have no standing to bring this action, and the remedy invoked is not the appropriate one.
The plaintiffs herein are taxpayers of Nassau County. The gist of their attack on the assessment method is that by the continued utilization, year after year, of the 1938 valuations as the basis for assessing improved property in Nassau County, assessments which reflect the full or market value of the property, as mandated by section 306 of the Real Property Tax Law and the State and Federal Constitutions, cannot be and are not achieved.
As to the procedural questions raised by the defendant, the court can find no merit with respect to any of them. It is not clear to this court how the standing of the taxpayers here is any different or any less secure than that of the taxpayers in C.H.O.B. Assoc. v. Board of Assessors (45 Misc 2d 184, affd. without opn. 22 A D 2d 1015, affd. 16 N Y 2d 779), wherein taxpayers were permitted to challenge, albeit unsuccessfully, the assessment procedures of Nassau County as to vacant land.
In any event, it has been clearly held that: “A declaratory judgment action is preferred where the legality and construction of statutes, constitutional infirmities and the propriety of official acts are the points of inquiry and a decision will afford assistance to the municipality and its citizens.” (Bradford v. County of Suffolk, 257 App. Div. 777, mod. 283 N. Y. 503 ; Bloom v. Mayor of City of New York, 35 A D 2d 92). As is stated in Bloom v. Mayor of City of New York (supra, p. 97): “ The true question is whether a cause for complaint has been stated; the form of the action or proceeding can be molded by the court. * * * Thus, in a declaratory judgment action the court may not only review the constitutionality of the statute, but also determine whether a public official acted in disregard of the statutory standard, or in excess of the grant of authority
*152 The contention that the methods used by the assessors in determining the assessments are not judicially reviewable was also disposed of by this Court in C.H.O.B. Assoc. v. Board of Assessors (supra). As the court pointed out in that case (p. 187), the cases which have held that the assessor’s methods are not reviewable ‘ ‘ have all involved proceedings to review actual valuations.” In such proceedings, the test “ ‘ is not the formula used but the fairness and reasonableness of the board’s conclusion. The result, not the method, is controlling. ’ In refusing a review of the assessor’s methods in such cases, the courts have made it quite clear that it was the assessors’ mental processes, observations and judgments which were in back of the actual valuations, which were not the proper subjects of judicial scrutiny.”
The instant action is distinguishable, as was the C.H.O.B. case, in that ‘ ‘ It does not seek a review of any actual valuations, but attacks instead the method used in the preparation of the roll. A review of the method here does not necessitate an inquiry into the assessor’s mental processes, judgment and observations ” (C.H.O.B., supra, pp. 187-188). Inasmuch as the plaintiffs are not complaining of or seeking a specific review of their own assessments, they are not restricted to seeking their relief at Special Term, Part 4, in a certiorari proceeding, as is urged by the defendant.
The defendant further argues that the issues which are raised here by the plaintiffs have been previously raised and determined in the C.H.O.B. case (supra) and in Matter of Connolly v. Board of Assessors of County of Nassau (32 A D 2d 106). The court cannot agree with this contention, for those cases are clearly distinguishable from the case at hand.
Both of the cases relied upon involved the assessment of vacant land only. As is disclosed by those cases, until 1964 the Board of Assessors assessed improved and unimproved properties at 100% of the values listed on a land value map, which values were intended to reflect the properties’ value in terms of 1938 prices. The assessments produced by this process were purported to be at a uniform ratio to market value in that (1) the assessed valuations of land in the vacant parcels and the assessed valuation attributed to the land in the improved parcels were maintained at the same ratio to their full or market value; and (2) that the total assessed valuation of an improved parcel (both land and building) was at the same ratio to its full or market value. Up to that time it was generally assumed that the prevailing ratio in Nassau County was *153 between 30% and 50% (Howard T. Hogan, Judicial Review of Real Estate Tax Assessments, Nassau Lawyer, Jan. 1963, p. 9). In Matter of Mid-Island Shopping Plaza v. Podeyn (25 Misc 2d 972, affd. 14 A D 2d 571, affd. 10 N Y 2d 966) Mr. Justice Hogan found the ratio to be 35.88%.
In 1964 the Board of Assessors found that the relationship of assessment to market value as to unimproved property bore considerably less uniformity than the assessment ratio for improved properties. As a result, resolutions were enacted (copies of which are annexed to the defendant’s brief) by which the defendant adopted “ A Current Market Value Land Map ”, and declared that 33% % ‘ ‘ represents the fair, equalized ratio of assessed value to current market value of vacant and unimproved land in the County.” (Resolution No. 35- 1964.)
The effect of these resolutions was to create two classes of property for assessment purposes: (1) improved property and certain unimproved property (i.e., property used as a golf course; property contiguous to a homeowner’s dwelling which the owner does not intend to sell separate from the dwelling; and areas containing less than the minimum required for a building permit), which were to be assessed at 1938 values; and (2) all other unimproved property, which was to be assessed at one third of the current market value. The purpose for making this change in the assessment procedure for unimproved property was so that the same ratio could be achieved between the assessment and the full or market value of this unimproved property as was presumed to exist between the assessment and the full or market value of improved parcels.
In the C.H.O.B. case (supra) the plaintiff challenged the new method of assessing unimproved property pursuant to the 1964 resolutions. However, the plaintiff did not challenge or otherwise dispute in that action the accuracy of the finding of the Board of Assessors that “ A sampling study of the assessment of improved residential properties indicates a uniformity of assessment in relation to market value of improved property throughout the County of Nassau” (Resolution No. 1- 1964). Nor did it challenge the method employed as to the assessment of improved parcels.
By its holding in (G.H.O.B., this court merely determined that by the new method employed by the county as to unimproved land and sanctioned by the resolutions, the defendant could achieve the same uniform ratio as between the assessment and full or market value of unimproved land as was presumed *154 to exist as between the assessment and the full or market value of improved parcels. The court was not there asked to pass upon whether or not such a ratio was actually achieved, or whether or not the ratio presumed to exist between the assessment and the fair market value of improved properties did in fact exist. This court was careful to point out in its decision in C.H.O.B. (supra, p. 190), that its holding did not rest upon any acceptance of ‘ the recitals in the resolutions as proof of the studies or of their sufficiency, or of the validity or accuracy of the findings, or that the ratio of 33%% is the prevailing ratio for improved residential properties ”.
The court also held in C.H.O.B. (p. 192) that the statutory mission as to the assessment of property as mandated by section 306 and interpreted by the courts is achieved ‘ ‘ if the total assessed valuation of each assessable parcel within the county is maintained at a uniform ratio to full or market value.”
The challenge here is to the method which has been used for more than 30 years of assessing improved property on the basis of 1938 valuations. Plaintiffs assert that the statutory mission of section 306 as to improved parcels is not and cannot be achieved by this approach. The issue raised herein was not raised in the authorities upon which the defendant relies and has not been previously determined.
While this court is not called upon on this motion to pass on the merits of the plaintiffs ’ claim, it does conclude that the plaintiffs have stated a cause of action and that the motion to dismiss must be and hereby is denied.
It must be observed that in the C.H.O.B. case this court commented (p. 197) that it did not intend by its decision therein “ to suggest and does not find that there is no need for a complete review of all of the assessments in this county, or that it may not be a good thing to do.” These comments are as pertinent today as they may have been then, notwithstanding the continuing conscientious and diligent efforts of the county assessors to maintain the assessments of all improved parcels at a level which would treat all taxpayers equally and distribute the tax burden equitably. The doubts as to whether or not this 30-year old approach to assessing improved property does in fact result in an equitable distribution of the tax burden — particularly since a substantial percentage of these improvements have been constructed since 1938 — persist, and ought to be resolved once and for all. This action offers an appropriate opportunity to do so.