In the Matter of JULIUS L. GOLDSTEIN, Petitioner, against WILLIAM W. MILLS et al., Constituting the Tax Commission of the City of New York, et al., Respondents.

TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, Interveners, Respondents.

Supreme Court, Special Term, New York County, September 13, 1945.

852

*Julius L. Goldstein,* petitioner in person.

*Ignatius M. Wilkinson, Corporation Counsel (Mario A. Procaccino* of counsel), for respondents.

*William J. O'Shea* and *Henry J. Kennedy* for interveners, respondents.

McNALLY, J. This is an application for an order directing the Tax Commission of the City of New York to cancel the tax exemption on real property of Columbia University in the city of New York. The proceeding was initiated by the service upon the President of the Tax Commission of a petition, affidavit and notice of motion. Upon the return date of the motion the trustees of Columbia University applied for leave to intervene, which was granted. Thereafter petitioner served an amended petition which the respondents have answered and to which petitioner has replied.

The petitioner alleges he is a citizen of the United States and a resident of the city of New York. That Columbia University is operating as and holds itself out to the public to be a nonsectarian educational corporation, and that it owns and uses real property valued at many millions of dollars, which is held and marked by the Tax Commission of the City of New York as exempt from taxes under subdivision 6 of section 4 of article 1 of the Tax Law.

In a reply affidavit the tax-exempt real property is claimed to be assessed at $58,112,500, with a corresponding exemption of approximately $1,750,000 annually.

The petitioner states on information and belief that in granting the tax exemption for the year 1945–1946 the Tax Commis-

sion made no inquiry of or finding as to whether Columbia University does not deny the use of its facilities to any person, otherwise qualified, by reason of his race, color or creed, and that by reason of these premises the said exemption was and is capricious, unreasonable, illegal and void.

The amended petition is devoid of any allegation that Columbia University is denying or has ever denied the use of its facilities to any person by reason of his race, color or creed, nor is there any charge contained therein, directly or indirectly, of any racial or religious discrimination by Columbia University. The facts attempted to be set forth in the reply affidavit do not cure this defect. The respondents resist the application on several grounds: the main ones being that the amended petition is insufficient on its face by reason of the fact that it does not challenge the proposition that Columbia University, a nonprofit educational institution, uses its real property for educational purposes; that it does not state any facts charging or claiming discrimination; that the petitioner has failed to allege a clear right to the relief sought; that petitioner is not an aggrieved person and, consequently, has no standing in law to warrant the bringing of this proceeding; that the petitioner's construction of applicable law is erroneous, and that the petitioner is barred by the Statute of Limitations.

Under the provisions of subdivision 6 of section 4 of article 1 of the Tax Law, it is clear that the property of an institution is entitled to tax exemption if (1) it is organized exclusively for educational purposes, (2) it is a nonprofit institution and (3) its property is used exclusively for educational purposes.

The basis for right to relief as urged by petitioner is the fact that the Tax Commission failed to inquire or find as a fact that Columbia University does not deny the use of its facilities to any person otherwise qualified by reason of his color, race or creed before the statutory tax exemption was granted. The respondent Tax Commission in making the determination under review acted under subdivision 6 of section 4 of article 1 of the Tax Law, chapter 7 of the Administrative Code of the City of New York and chapter 7 of the New York City Charter (1938). Subdivision 6 of section 4 of article 1 of the Tax Law provides that the following property shall be exempt from taxation: " The real property of a corporation or association organized exclusively for the moral or mental improvement of men and women, or for religious, bible, tract, charitable, benevolent, missionary, hospital, infirmary, educational * * * or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes."

To entitle the real property of an educational corporation to tax exemption under the statute, it must appear that the said corporation was "organized exclusively" for one or more of the specified purposes and that the property is "used exclusively for carrying out thereupon one or more of such purposes." Where these conditions are met real property is exempted from taxation. It is not disputed that Columbia University has met both of these conditions. In fact, paragraphs 4, 6, 7 and 8 of the amended petition allege that: 4 "Columbia University was and now is an education corporation organized and operating as such under the laws of this State."

6 "Columbia University at all times hereinafter mentioned has owned and now owns and uses real property in the Borough of Manhattan, City and State of New York, for its administrative offices, graduate schools, colleges, dormitories, and allied purposes."

7 "Columbia University was and now is operating as a non-sectarian education corporation."

8 "Columbia University has held itself out and now holds itself out to be a non-sectarian education corporation."

In making its determination the Tax Commission followed the various steps provided by law. Section 157 of the New York City Charter provides that the taxable status of all real property assessable for taxation shall be fixed for the succeeding year on the 25th day of January in each year. The character of the property on the date of taxable status determines if it is assessable for the succeeding year (*Assn. for Colored Orphans* v. *Mayor etc.*, 104 N. Y. 581).

The affiant Mills, President of the Tax Commission, relates that the assessors under his direction commenced on August 1, 1944, their annual inspection of all real property in the city of New York, for the purpose of determining the taxable status of such real property for the tax year 1945–1946. This was done in accordance with the provisions of subdivision b of section 155 and sections 158 and 159 of the New York City Charter, which require that under the direction of the president the assessors shall assess real estate commencing on August 1st of each year and ending on January 25th of the following year. The assessors have the duty during that period to inspect real estate in their districts as well as other records relating to the taxable status of the real estate. The assessors also have the duty of ascertaining during such period whether there has been any change in title to the real estate in their respective districts and what effect such change has on the taxable status of real

property. Where the property has been previously classified as exempt the assessors further ascertain the use to which the property is presently put. The assessors thereafter furnish to the president under oath a statement of taxable real estate showing that they have personally examined each and every parcel of real estate and set forth the sum for which in the assessor's opinion the real estate would sell under ordinary circumstances (Administrative Code of City of New York, § 155b-1.0). Mr. Mills' affidavit further states that during the inspection period the assessor assigned to the district in which Columbia University is located inspected the real property as well as other pertinent records. He ascertained the use to which the real property of Columbia University was being put and that it had not changed since the previous year of 1944–1945, during which time the property had been marked exempted from taxation. He also ascertained that no change in the title to the property had occurred. Furthermore the records show that the real property of Columbia University had been exempt from taxation since its acquisition by Columbia. Thus, on January 25, 1945, the taxable status date for the year 1945–1946, the real property was still owned by Columbia University and was used exclusively for carrying out thereupon its educational purposes. Prior to February 1, 1945, in compliance with law, the Tax Commission determined that the said exemption be continued for the tax year 1945–1946.

The petitioner argues that inasmuch as the Tax Commission makes no finding of fact that Columbia University does not deny the use of its facilities to any person otherwise qualified by reason of his race, color or creed, the said tax exemption is illegal and void. Petitioner bases this conclusion upon his construction of the Tax Law, claiming that under the Tax Law an educational corporation which holds itself out to the general public to be nonsectarian is not entitled to a tax exemption until it is first established that such corporation does not deny the use of its facilities to any person otherwise qualified by reason of such person's race, color or religion. Petitioner points out in his brief that this part of the law has never been judicially construed and asks the court to fix the meaning of the statute. In the court's judgment the interpretation placed on the statute by the petitioner is erroneous. The statute in question (L. 1935, ch. 852) added the following provision to subdivision 6 of section 4 of the Tax Law: "No education corporation or association that holds itself out to the public to be non-sectarian and exempt from taxation pursuant to the pro-

visions of this section shall deny the use of its facilities to any person otherwise qualified, by reason of his race, color or religion."

The title of chapter 852 of the Laws of 1935 reads as follows: "An act to amend the tax law, in relation to the use of facilities of tax exempt educational corporations or associations". It is apparent that the legislative intent as far as it may be gleaned from the title was that the statute was directed to the use of property exempted from taxation under the earlier provisions of subdivision 6, without suggesting that the Legislature intended to create an additional condition for the obtaining of the exemption. From a reading of the statute itself it is clear that petitioner is in error in his contention that an educational corporation which holds itself out to the public to be nonsectarian is not entitled to a tax exemption until it is first established that such corporation does not deny the use of its facilities to any person otherwise qualified by reason of such person's race, color or religion. The language of the statute shows that this is not a condition for exemption for it states explicitly that no such corporation whose property is exempt from taxation under the provisions of the section shall deny the use of its facilities to such person. Furthermore, an examination of all the provisions of subdivision 6, as well as a reading of the whole of section 4, reveals that the amendment of 1935 was not intended to provide for a forfeiture of the exemption once granted. In the same paragraph wherein the real property owned by educational institutions and used exclusively for educational purposes is granted tax exemption, the Legislature has set forth certain conditions and circumstances under which tax exemption may be denied. Had it been the intention of the Legislature to provide for the denial of an exemption by reason of a discrimination, it is fair to assume that the new and separate paragraph added by chapter 852 of the Laws of 1935 to subdivision 6 would have been incorporated in the paragraph which sets forth the conditions and circumstances under which tax exemption is denied.

In the court's opinion, a fair construction of the statute is that it clearly sets forth a legislative policy to the effect that no tax-exempt nonsectarian educational institution shall discriminate against an individual because of color, race or creed. Logic and common sense would make it appear that the statute confers on a person who is otherwise qualified the right to compel the tax-exempt educational institution to grant such person the use of its facilities. The petitioner herein is not so aggrieved and does not fall into such a category.

It is further argued by the respondents that the petitioner is barred in this proceeding by the Statute of Limitations in that the proceeding was instituted more than four months after the determination of the Tax Commission became final and binding upon him. This proceeding was commenced by the service of the petition upon the respondents on July 19, 1945. Inasmuch as the proceeding was not instituted until more than four months had elapsed since the determination of the respondents became final and binding on the petitioner, it is barred by section 1286 of the Civil Practice Act, which provides in part: " A proceeding under this article to review a determination or to compel performance of a duty specifically enjoined by law, must be instituted  *  *  *  within four months after the determination to be reviewed becomes final and binding, upon the petitioner  *  *  *."

The proceeding being one to review a determination or to compel the performance of a duty specifically enjoined by law, the suit runs from the date that the Tax Commission made its determination or allegedly failed to perform the duty of canceling the exemption granted to the property of Columbia University. The date from which the four months' limitation runs is March 15, 1945, at which time the determination of these respondents became final and binding. March 15, 1945, is the last day permitted by law for the filing of applications for the correction of or protests against assessed valuations (New York City Charter, §§ 160, 163). Where no application for the correction of or protests against a determination of the Tax Commission as to the taxable status of real property is filed by March 15th, or where such determination remains unchallenged, the Tax Commission is without power or authority after March 15th to place on the books of the annual record of assessed valuations any real estate that may have been omitted from such books (New York City Charter, §§ 160, 163, 164, 165).

For the foregoing reasons the application of the petitioner is denied and the motion of the respondents to dismiss the proceeding is granted.

Settle order.