Howard T. Hogan, J.
In this article 78 proceeding the petitioners seek judgment enjoining the City of Long Beach from “ collecting and enforcing the 1969 City of Long Beach Beal Estate Taxes ”, directing the payment of reasonable attorney’s fees, permitting the petitioners to copy certain real estate appraisal records, permitting the petitioners to copy the city’s assessment rolls for the years 1967,1968 and 1969, and for other relief. The respondents have cross-moved for dismissal.
It appears from the documents before the court that prior to the adoption of the 1969 assessment roll, the City of Long Beach assessed real property at a ratio of 35% of full value. According to the respondents’ affidavits, the ratio for the 1969 tax year has been increased to 80%. In that connection the city entered into a contract in 1966 with a Dayton, Ohio, firm to appraise each of the properties within the city. The report of that appraisal firm was utilized by the Board of Assessors in arriving at the assessments for the property on the tax roll.
One effect of the reassessment and the increase in ratio has been the dilution of specific exemptions. Section 458 of the Beal Property Tax Law provides for certain veterans’ exemptions, and subdivision (3) of that section directs that the amount of the exemption be subtracted from the total assessed valuation. A hypothetical situation will illustrate the result of the new assessment procedure.
Prior to 1969 a veteran entitled to a $5,000 exemption whose home in the city had a full value of $25,000 would have his exemption deducted from the assessed value which was predicated upon 35% of full value, or in this case, from $8,750 which would leave him a final assessed valuation of $3,750.
Under the new roll, and applying an 80% ratio, his assessed value prior to the exemption would be $20,000 and his final assessed value $15,000.
*229 The petitioners have shown that the result of the change is to increase their tax payments by up to $200 per year.
Counsel for the Assessors concedes one of the results of the new ratio is a reduction in the tax saving pertaining to veterans’ exemptions, and such clearly is the case. However, he argues that such was not the goal of the city or the Assessor but merely a by-product of the Assessors’ attempt to more equitably disburse the burden of taxation among all the property owners in the city by re-evaluating all property for the first time in some 30 years.
The first point raised is whether an article 78 proceeding is a proper remedy or whether each petitioner is relegated to a proceeding under article 7 of the Real Property Tax Law.
The petitioners here do not seek a review of any particular assessment. Rather they challenge the entire roll as void predicated upon the alleged illegal act of the Assessor in changing the applicable ratio. In cases where the very jurisdiction of the Assessor is challenged, the courts have held an article 78 proceeding to be a proper remedy. (See Elmhurst Fire Co. v. City of New York, 213 N. Y. 87.) The court holds that such remedy lies in the case at bar.
However, a very serious question arises concerning the timeliness of this proceeding.
The chronological sequence of pertinent events is as follows:
Completion of Assessment Roll.. June 1, 1968
Grievance Period ............. June 1st to third
Tuesday in June
Piling of Corrected Roll........ September 1, 1968
Last day for Piling Petitions... September 30, 1968
Adoption of City Budget....... November 30, 1968
Extension of Taxes for 1968/69.. December 1, 1968
According to CPLR 217 a proceeding against a body or officer must be 1 ‘ commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner ”. It could be argued that the 30-day limit established in section 82 of the General City Law applies to the within application but that proposition has not been advanced in this case. However, the court finds that, even applying the four-month limitation, this proceeding is untimely.
The matter was commenced by service of an order to show cause on March 29, 1969, almost seven months after the filing of the corrected roll on September 1, 1968, and at a time when first half tax collections had already been made.
*230 Petitioners’ own Exhibit B is a four-page pamphlet issued by the Assessor, dated March 1, 1968, and detailing an outline of the plan. Surely the petitioners were aware of the reassessment plan, and they are charged with the knowledge of their individual assessments when the roll is completed on June 1, 1969.
In the case of Matter of Goldstein v. Mills (185 Misc. 851, affd. 270 App. Div. 930), the petitioner brought a proceeding to direct the Tax Commission of the City of New York to cancel a tax exemption on certain .real property. The court held that the four-month provision then contained in the Civil Practice Act applied and that “ the date from which the four months’ limitation runs is March 15, 1945, at which time the determination of these respondents became final and binding. March 15, 1945, is the last day permitted by law for the filing of applications for the correction of or protests against assessed valuations ”.
Section 506 of the Beal Property Tax Law provides for the tentative completion of the assessment roll and notice of such fact. It has been long established that after notice and completion, the Assessor cannot change the persons or property assessed or the valuation fixed except on complaint of the party aggrieved. (People ex rel. Chamberlain v. Forrest, 96 N. Y. 544; Overing v. Foote, 65 N. Y. 263.) The logic of the Goldstein case (supra) is sound, and this court holds that the instant proceeding would have to have been commenced within four months of the third Tuesday in June — June 17, 1968.
However, even if the question were properly presented, the court would be constrained to hold the objections to be without foundation.
The duty of assessing real property is placed upon the Assessor (Real Property Tax Law, § 102, subd. 3) who in the case at bar is an official of the city (Long Beach City Charter, § 8). He is by definition charged with the duty of “ assessing real property for the purposes of taxation * * * for * * * city * # * purposes.” (Real Property Tax Law, § 102.)
Section 2 of article XVI of the New York State Constitution provides that all real property in the assessing unit be assessed at ‘ ‘ full value ’ ’. This, however, has been construed not as requiring assessment at 100% of market value but only that assessments be made at a uniform percentage of full value for every type of property within the assessing unit. (C.H.O.B. Assoc. v. Board of Assessors of County of Nassau, 45 Misc 2d 184, affd. 22 A D 2d 1015, affd. 16 N Y 2d 779.)
*231 The question presented by the petitioner is whether the Assessor has the right to select the percentage of full value or whether that determination is within the arena of legislative activity.
In 1888 the Court of Appeals in People ex rel. Warren v. Carter (109 N. Y. 576, 581) analyzed the procedure to be followed in an inequality case and held that “ Where the assessors in a particular case depart from a general rule or ratio of assessment which they have adopted, to the injury of the taxpayer in the particular case, the statute affords a remedy ” (emphasis supplied).
The statute in question was an act of 1880 which contained almost the exact language of section 706 of the present Real Property Tax Law that a remedy is available while the valuation is alleged to be: “ unequal in that the assessment has been made at a higher proportionate valuation than the assessment of other real property on the same roll by the same officers ”. All that the Assessors are required to do is to assess all similar property on an equal basis. The selection of the rate to be applied is a part of their function and is reflected in the roll as completed by them.
The court does not agree that fixing the ratio is a legislative function to the extent that the City Council must set the rate. The legislative mandate to the Assessor is to assess, and the Assessor meets that mandate when he assesses all similar property at a uniform ratio.
There is no question but that the reassessment at 80% of full value has cost these petitioners additional tax dollars, and the court would like to see each person who has served his country obtain every benefit available. However, the Assessor in this case has violated no law in carrying out his assessment duties.
Petitioners’ attorney has given no authority for payment of counsel fees in this application and that branch of the petition is denied.
It appears as though the assessment rolls for the past years are available to the petitioners and that phase of the application is denied.
The remaining aspect of the petition seeks access to the assessment cards. There is no proof in the case at bar that the Assessors have adopted the appraisals of the consultants as the official appraisal of the taxing authority. The Assessor asserts that they were not definitive of the values fixed by the Assessor. A bland adoption of them would be a derrogation *232 by the Assessor of his duties. (Matter of Barrett v. Munger, 201 Misc. 985.)
It has been held, and properly so, that a ‘ ‘ Kardex ’ ’ system reflecting values of assessments are public documents which can be reached by the petitioner in a tax certiorari case. (Matter of Sears Roebuck & Co. v. Hoyt, 202 Misc. 43.) The court also indicated that it would be necessary for the petitioner to demonstrate .some interest in the material other than idle curiosity, citing American Dist. Tele. Co. v. Woodbury (127 App. Div. 455).
Since the cause of action for a restraining order is dismissed, these petitioners have not demonstrated any interest in the records of the Assessors. If, of course, any of them have instituted an article 7 proceeding, they would be free to renew this application in such proceeding.
There is not one whit of evidence upon any cause of action against either the Attorney-General of the State of New York or the Comptroller of the State of New York, and the court has not the faintest inkling of why they were joined in this proceeding.
The petition is dismissed on all causes of action against all respondents.