Sidney A. Fine, J.
Petitioners sue for a writ to prohibit respondents New York State Division of Human Rights (Division) and Stephen L. Friedes from conducting a discrimination complaint hearing on the ground they are proceeding in excess of jurisdiction.
Respondent Friedes, on May 28, 1974, filed with the Division *703 a complaint, which in its present form charges petitioners, New York University School of Medicine and Roger F. Rose, Assistant Dean of Admission, with discrimination in refusing him admittance to the Medical School because of his race, color and creed, in violation of the Human Rights Law (Executive Law, § 290 et seq.), although his qualifications for admission were far greater than those admitted.
Specifically, Friedes states that he graduated magna cum laude from Syracuse University in May, 1973; that his grades and medical college admittance test scores were higher than the average acceptance level for medical school. That on September 20, 1973, he applied for admission to petitioner’s medical school. Six months later he received a form letter, signed by petitioner Rose, rejecting his application because there was no room in the school’s next entering class. Because Friedes believed that such rejection was the result of an arbitrary quota system, and because he was Jewish, he filed a complaint with the Division, later amending it to add Caucasian.
The merits of the controversy are not before the court, only the question whether the Division has jurisdiction in the first instance to pass on the complaint, and which involves the construction of subdivision 4 of section 296 of the Executive Law.
This proceeding was triggered by "a written determination made by the Division on September 26, 1974 * * * that it has jurisdiction in this matter and that there is probable cause to believe that respondents [petitioners herein] engaged in, or are engaging in, the unlawful discriminatory practice complained of” and recommended a public hearing. A notice later followed and hearing scheduled on December 9, 1974. This proceeding was then instituted. Pending final determination herein, the hearing has been adjourned sine die.
Initially the Division and Friedes challenge the propriety of the application for a writ of prohibition. They argue that prohibition is an extraordinary remedy to be invoked only to restrain the exercise of unauthorized jurisdiction and is not available to prevent possible error, which may be corrected on appeal. That petitioners have not shown any extreme necessity for such relief, or that, in any event, there can be no irreparable harm if the proceeding continues before the Division, and in any event, petitioners have the right of review from any adverse determination by the Division.
*704 However, the Division obliquely admits that it is not likely it would hold that it has no jurisdiction in the case.
NYU contends that Friedes’ complaint does not allege acts constituting one of the unlawful discriminatory practices enumerated in . section 296 of the Executive Law over which the Division has subject matter jurisdiction. That the gravamen of Friedes’ complaint is that the NYU School of Medicine has established and implemented policies relating to the admission of students to its courses of study which have the effect of discriminating against him on the basis of his race, color and creed, in violation of subdivision 4 of section 296 of the Executive Law. It reads: "It shall be an unlawful discriminatory practice for an education corporation or association which holds itself out to the public to be non-sectarian and exempt from taxation pursuant to the provisions of article four of the real property tax law to deny the use of its facilities to any person otherwise qualified, by reason of his race, color, religion, disability or national origin.”
NYU argues further that the section has no application to Friedes’ grievance. That only the Commissioner of Education and Regents of the State of New York have exclusive jurisdiction over Friedes’ complaint pursuant to section 313 of the Education Law.
It points to the legislative history and plain meaning of the section in support of its position. That the language now embodied in subdivision 4 of section 296 of the Executive Law was originally created in chapter 852 of the Laws of 1935. The following was added to the then existing provisions of former subdivision 6 of section 4 of the Tax Law: "No education corporation or association that holds itself out to the public to be non-sectarian and exempt from taxation pursuant to the provisions of this section shall deny the use of its facilities to any person otherwise qualified, by reason of his race, color or religion”.
Petitioner cites Matter of Goldstein v Mills (185 Misc 851, affd 270 App Div 930) and quotes a part thereof, suggesting that the added anti-discrimination clause quoted above dealt with the use of the property. It emphasizes the following quote from the opinion (p 856): "Logic and common sense would make it appear that the statute confers on a person who is otherwise qualified the right to compel the tax-exempt educational institution to grant such person the use of its facilities.”
Goldstein was a mandamus proceeding to require the Tax *705 Authority to cancel the tax exemption of Columbia University because it was illegal, since the authority failed in its clear primary duty to first determine as a fact that Columbia had complied with the anti-discrimination provision of the Tax Law quoted above.
The record in the Goldstein case revealed that Columbia was charged with racial discrimination by using the quota system in admitting students. The charge of discrimination in admissions permeated the briefs of the contending parties and no argument was made that the "use of its facilities” in the anti-discrimination clause in the tax statute did not include admission of students.
In 1948 two years after the affirmance of the Goldstein decision the Legislature gave to the Education Department the power to investigate, conciliate and refer to the Board of Regents for public hearing petitions relating to discrimination (L 1948, ch 753, adding Education Law, § 313).
Nevertheless 10 years later the Legislature in enacting section 23 of chapter 960 of the Laws of 1958 added subdivision 4 of section 296 to the Human Rights Law, which carries the same anti-discrimination clause as appeared in the tax statute.
NYU further argues that it is an education institution as defined in the Education Law and under the jurisdiction of the Chancellor and Regents of the State of New York and that under the Education Law NYU cannot, "exclude or limit or otherwise discriminate against any person or persons seeking admission as students to such institution because of race, religion, creed, color, or national origin” (§ 313, subd [3], par [a]).
And section 313 (subd [5], par [a]) provides the machinery for redress against discrimination by specific and clear language that "Any person seeking admission as a student who claims to be aggrieved by an alleged unfair educational practice” may file a petition with the Commissioner of Education setting forth the particulars of his claim. If probable cause is found the commissioner may attempt to mediate or conciliate the matter. If unable to do so the matter is referred to the Regents and a procedure is set out for final determination.
Hence NYU claims that section 313 by clear and concise language is the exclusive forum of determining the issue of discrimination presented herein. Furthermore the Commis *706 sioner of Education and the Regents have the special competence to deal with the alleged grievance herein.
Another reason to support jurisdiction in the Education Department is that Friedes’ amended claim arises out of NYU’s compliance with Regents Position Paper No. 15 entitled Minority Access To and Participation in Post-Secondary Education. It called upon institutions in the State to adopt plans which were required to include provisions for affirmative action to increase the enrollment of minority group students. It did so in the following language: "The Regents believe that colleges and universities should encourage applications for admission from minority groups and take affirmative action to admit such students” (p 8) and that as a result thereof NYU’s admission policies and in particular the school of medicine comply with and follow the Regents’ authorized and recommended policy for educational institutions of higher learning in the State.
NYU’s basic argument is that denial of "the use of its facilities to any person otherwise qualified, by reason of his race, color, religion, disability or national origin” has nothing to do with admission policies which under section 313 of the Education Law is within the exclusive jurisdiction of the Education Department.
The attempt to distinguish between denial of use of facilities and denial of admission is a strained and tenuous construction not consonant with the plain meaning and language of subdivision 4 of section 296 of the Executive Law.
Implicit in the word "facilities” is education facilities which includes the entire institutional arrangement by means of which a "qualified person” is enabled to secure a particular - type of education.
The court rejects the argument that subdivision 4 of section 296 is limited to the use of facilities after admission, and does not involve admission policies.
The provisions of the Human Rights Law clearly intend that the "use of facilities” covers admissions of qualified students.
In subdivision 3 of section 290, part of the purpose clause of the law, the Legislature finds that an "inadequate education” results in a deprivation of equal opportunity to enjoy a full and productive life, threatens the rights and privileges of inhabitants of this State, menaces the very foundations of *707 democracy and threatens the health, safety and general welfare of the State and its inhabitants. The Legislature then created in the same subdivision, the respondent Division "to eliminate and prevent discrimination * * * in educational institutions” and the Division "given general jurisdiction and power for such purposes.”
Subdivision 2 of section 291 recognizes that the opportunity to obtain education without discrimination because of racé, creed, color or national origin, as specified in section 296 of the article is declared to be a civil right. And section 300 requires a liberal construction of the Human Rights Law "for the accomplishment of the purposes thereof’.
All of the above provisions are meaningless if the "use of facilities” does not embrace admission policies.
In the court’s view the Education Department and the Division of Human Rights have concurrent jurisdiction. In the field of civil rights there are parallel examples. The Division has overlapping functions with many other governmental agencies, such as Equal Employment Opportunity Commission, New York City’s Commission on Human Rights, the Secretary of Labor of the United States and the State Industrial Commissioner, who administers equal pay laws similar to the equal pay provisions in the Human Rights Law; Federal and local housing agencies; Federal and State labor boards having jurisdiction over discriminatory union practices.
A principal issue and which NYU asserts as a defense to the complaint is Regents Position Paper No. 15 which mandates the admission policies here in question and that for this reason the Division is not the appropriate agency to pass on the issue. This argument is unacceptable.
"Legislative enactments in this area have long evinced a general intent to accord parallel or overlapping remedies against discrimination” (Alexander v Gardner-Denver Co., 415 US 36, 47; in accord Matter of Maloff v City Comm. on Human Rights, 46 AD2d 852).
The situation herein does not warrant the granting of the extraordinary remedy of prohibition. Parenthetically, it may be pointed out that the issue herein is of great importance, as it involves a stated policy of the Board of Regents with far-reaching effects. For this reason, it may well be appropriate for the Division to designate a hearing officer from outside the agency with the special qualifications that this matter would seemingly require.
*708 Petitioners’ application is denied in all respects.