Jones, J.
(dissenting). I think the order of the Appellate Division should be affirmed.
While the long-standing practice of fractional assessments for real property taxation cannot be said to violate the constitutional mandate that "[assessments shall in no case exceed full value” (NY Const, art XVI, § 2), there can be no blinking the fact that fractional assessment cannot be squared with the literal command of section 306 of the Real Property Tax Law —"All real property in each assessing unit shall be assessed at the full value thereof.”
Were we now called on to interpret such a provision in a recently adopted statute or to pass on the propriety of an emerging practice of fractional valuation under an older enactment, we would be confronted with an entirely different question. Neither is the case now before us, however.
As is stated in the majority opinion, the literally explicit provision of section 306 which it is now sought for the first time in our court to enforce has an ancient lineage. As the majority also recognizes, however, paralleling the long history of statutory address to "full value”* has been the equally venerable practice of fractional assessment. With but a few, desultory exceptions, the custom of fractional assessment has been followed without challenge until recently. It appears that over the years a collector was held liable for taking property under a certificate based on a fractional assessment only in a single reported instance (Van Rensselaer v Witbeck, 7 NY 517). In People ex rel. Board of Supervisors v Fowler (55 NY 252) the supervisors of Westchester County sought unsuccessfully to compel full value assessment by requiring the assessors to file a proper certificate of assessment. The court, taking note of uncontroverted proof that it had been the custom at least for several years not to assess at full value but rather to . assess at about one third or in some cases at one fourth of full value, refused to require the assessors precisely to track the statutory language. "Courts do not sit to compel man to take false oaths, and whatever duty the assessors may have omitted, they owe no duty to the public to commit crime, and no public exigency can require it of them.” (55 NY, at p *16 254.) While the Fowler court commented critically on the discrepancy between statutory language and practice, as did the Appellate Division, Third Department, in the later case of People ex rel. Congress Hall v Ouderkirk (120 App Div 650) ("But it is a custom not only wholly repugnant to the plain mandates of the statute, but also radically at war with the official oaths of the assessors and also with their oaths to the assessment rolls” [p 655]) no judicial mandate was sought or granted to enforce strict conformity with the statutory language.
In C H O. B. Assoc. v Board of Assessors of County of Nassau (16 NY2d 779, affg 22 AD2d 1015, affg 45 Misc 2d 184), without opinion, we affirmed determinations below which had included statements rejecting the contention that the practice of fractional assessments violated section 306. There followed a number of cases in which the practice of fractional assessments was recognized as valid by the Appellate Divisions (e.g., Connolly v Board of Assessors of County of Nassau, 32 AD2d 106; Nicolette v Village of Clyde, 34 AD2d 202; Margeson v Smith, 41 AD2d 896; McAlevey v Williams, 41 AD2d 971; Matter of Drelich v Kahn, 60 Misc 2d 227). Although it may be accurate to say that our court has never squarely confronted the issue and held the practice of fractional assessment valid, more significant in my view, although obviously not conclusive, is the conspicuous fact that notwithstanding the ingenuity and dogged determination of taxpayers, sometimes on the flimsiest of arguments, to resist taxation thought to be illegal, the present is the first case in nearly 200 years in which our State’s highest court has been invited to confront the issue head-on and to overturn fractional assessments.
From a different point of view we note that notwithstanding what we must assume has been the awareness of fractional assessment practice on the part of individual legislators (on few issues are voter pleas more continuous or persistent than those in search of tax relief!) no legislation has been adopted over the years to require abandonment of the uniform, Statewide practice. As we said recently in Engle v Talarico (33 NY2d 237, 242): "Where the practical construction of a statute is well known, the Legislature is charged with knowledge and its failure to interfere indicates acquiescence (RKO-Keith-Orpheum-Theaters v City of New York, 308 NY 493).”
Not only has there been a failure on the part of the Legislature to interfere with fractional assessments; legisla *17 tion has been enacted which was clearly predicated on the practice of fractional assessments. New York State began establishing equalization rates in 1859. From then until 1912 State equalization rates, set only for whole counties, were used to equalize assessed valuations of the various counties in order to apportion State property taxes among the counties during the period when the State was levying direct taxes on property. In 1912 the State began to estáblish equalization rates for individual cities, towns and villages. In 1958, in the same chapter in which it enacted present section 306 of the Real Property Tax Law, the Legislature also adopted article 12 of the Real Property Tax Law which provides for the establishment of State equalization rates. The critical significance of this continuing pattern of legislative activity, of course, is that it was all premised on the assumption that there was an existing practice of fractional assessments and the implicit expectation that the practice would continue. Had the Legislature intended to insist on State-wide full value assessment there would, of course, have been no occasion for equalization machinery or procedures.
It must be evident that the local boards of assessors, the agencies of government charged with responsibility for implementation of the statutory scheme for assessment of real property, construe the statutory provisions to authorize fractional assessments. In other contexts we have repeatedly held that if not irrational or unreasonable the construction given a statute by the agency charged with responsibility for its administration should be upheld (Matter of Howard v Wyman, 28 NY2d 434, 438, and its progeny).
Today’s decision of the majority will affect many more persons than the first instance taxpayers. The enthusiasm of purchasers at tax sales for nonpayment of taxes based on fractional assessments will be chilled. At a moment of the greatest strain on the public fisc in many years, I suggest that so to hinder the collection of taxes could be nothing short of disastrous. Less significantly, title examiners with the conspicuous distaste for bold adventure which has always characterized their activities can be expected to be hesitant to certify tax titles based on fractional assessments in the past after we have declared that such practice violates the statute. Additionally I can visualize the filing of literally hundreds of protective claims.
I cannot believe there will not be other practical ramifica *18 tions among many taxpayers and others, none of whom will be legally bound by the waiting period imposed on Pauline Hellerstein.
Nor, on the other hand, do I foresee any effective counter-move to today’s decision available to the Legislature. Even if a bill were passed tomorrow expressly authorizing fractional assessments, I know of no authority by which such an enactment could be given retroactive effect to disturb or modify property rights otherwise vested and fixed.
In short I see no way open to the court, as it would be to the Legislature were the court not to speak, to make a practically effective prospective-only determination with respect to the validity of fractional assessment practice. In my view for our court to attempt to do so will be to invite utter confusion, immediately, among taxpayers, assessors, tax collectors, purchasers of tax titles, title examiners, and others.
In these circumstances and in the light of the history of both enactment and failure to enact on the part of our State Legislature, of the construction uniformly placed on the statutory assessment procedures by those charged with direct responsibility thereunder, and of what I can only characterize as the general acceptance by taxpayers and municipal authorities alike of fractional assessments, I conclude that it ill becomes the judiciary, in what I conceive to be an exaggerated emphasis on the literal but long-ignored terminology of the statute, to overturn a practice of such venerable and broadly accepted status. No one questions that the Legislature could explicitly authorize the present practice; there would be no constitutional impediment. I agree that it would be desirable from various points of view were the Legislature unmistakably to express its views with reference to fractional assessment. I see no sufficient reason, however, to invalidate present practice for the purpose of forcing the issue, opening as it inevitably will a veritable Pandora’s box of both foreseeable and unforeseeable complications. Attractive and persuasive as are some of the arguments in support of the principle of full value assessment (more appropriately, however, to be addressed to the Legislature), it must be conceded as a practical matter that the implementation of such a system could be achieved only by the expenditure of very large sums of money to defray the expense of what would have to be nearly Statewide reassessment procedures. On the one hand I see no warrant for the judicial imposition of such costs in the histori *19 cal circumstances of this case. On the other, I see no justification or useful purpose to be served in forcing the Legislature to go through the ceremony of formally expressing what I can only believe is-at least its tacit approval of present fractional assessment procedures.
I would, therefore, affirm the order of the Appellate Division.
I am obliged additionally to observe that not only do I seriously question the wisdom of giving prospective-only effect to judicial determinations as does the majority in this case, more importantly I know of no sufficient legal authority for such a procedural disposition.
Judges Jasen, Fuchsberg and Cooke concur with Judge Wachtler; Judge Jones dissents and votes to affirm in a separate opinion in which Chief Judge Breitel and Judge Gabrielli concur.
Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.

 In passing we note that the concept of "full value” is itself elusive. In many instances it is the equivalent of what is generally described as "market value”. In periods of sudden and extreme variations of market prices or of prolonged depressed values, full value does not, however, follow the graph line up or down. The State Board of Equalization for its purposes uses a moving average of the market price levels in each locality.