OPINION OF THE COURT
Gerard M. Weisberg, J.
Petitioners instituted a proceeding seeking to annul and set aside respondents’ denial of certain tax benefits. On this trial, pursuant to CPLR 7804 (subd [h]) the narrow factual issue that this court must decide is the date on which respondents’ determination became final and binding on petitioners. (Matter of 301-52 Townhouse Corp. v Click, Supreme Ct, NY County, Aug. 11, 1981, Sinclair, J.) If the proceeding was commenced more than four months after such date, it is barred by the Statute of Limitations. (CPLR 217.)
*1051 On December 27,1979, Beekman Associates (Beekman), one of the petitioners herein, filed an application for tax benefits under section J51-2.5 of the Administrative Code of the City of New York with the New York City Department of Housing Preservation and Development (HPD). That section provides tax abatements and exemptions to owners of multiple dwellings who have upgraded or renovated their properties, or who have converted their properties into residential use. A tax abatement is a reduction of taxes on the existing assessed value of the property. A tax exemption, on the other hand, relieves the property owner from those additional taxes attributable to the increase in the property’s value, which occurs after the qualifying J51 improvements are put in place. We note that Beekman’s compliance with the substantive requirements of the J51 program are not an issue at this time and will not be considered. What is relevant to the instant matter are the procedural requirements for qualification under the program.
It is HPD’s function to review each application and to issue a certificate of approval if it finds that the J51 requirements are met. (Rules and Regulations, Administrative Code of City of New York, § J51-2.5, tit 4, § 4.8 [hereinafter referred to as J51 Rules and Regulations, tit 4].) Substantiating documentation may be required. This may take the form of a certification of costs by a certified public accountant. (J51 Rules and Regulations, tit 4, § 4.4[2].) Upon obtaining a certificate of approval, an applicant is required to file with the Department of Finance of the City of New York (Finance) in order to implement the J51 relief.
To receive a tax abatement beginning on the first day of any quarter, an application, including a certificate of approval, must be submitted to Finance during the third month preceding the start of the quarter. (J51 Rules and Regulations, tit 4, § 4.9.) Therefore, if a taxpayer seeks an abatement commencing on July 1, he or she must file in the preceding month of April. A tax exemption commences on the July 1 following the commencement of the tax abatement, except that if the abatement begins on July 1, the exemption starts at the same time. (Rules and Regula *1052 tians, Administrative Code of City of New York, § J51-2.5, tit 5, § 5.1 [3].) Thus, to receive an exemption starting on July 1 of any given year, filing must occur during the preceding month of April.
In the instant case, HPD, upon reviewing Beekman’s application requested Beekman’s attorney to submit a letter from a certified public accountant. This was given to HPD on or about March 7, 1980. It was found to be unacceptable and a second letter was requested. This was received by HPD on or about April 29, 1980 and was also rejected. Beekman’s attorney was told a third letter would be necessary. This was submitted on or about May 7,1980, approximately one week after the deadline for filing with Finance had passed (i.e., April 30,1980 for implementation of benefits on July 1).
HPD determined that this third letter was in conformity with its standard of review and, accordingly, issued a certificate of approval dated May 12, 1980. With this in hand, Beekman, on or about May 19, 1980, submitted an application for tax benefits, effective July 1, 1980, with Finance. Accompanying this request was a letter, dated May 19, 1980 from Beekman’s attorney which stated in part “[w]e are herewith submitting an application for Tax Abatement and Tax Exemption and respectfully request that same be granted on remission by the Tax Commission.”
Solomon Finkelstein, the administrative assessor in charge of Finance’s exemption unit, and the person who handled this application, testified on behalf of respondents at trial. He stated that upon receipt of Beekman’s application, he was unsure of whether benefits could be granted effective July 1. He therefore called HPD to see if the application could be deemed approved as of April 30. After a discússion with the HPD official who recommended the ultimate issuance of the certificate of approval, it was determined that no such retroactive approval could be granted. Thereafter, Mr. Finkelstein called Beekman’s attorney to advise that he could not accept the application. He also suggested that the application be refiled with Finance in July, since that month, and not May, was one of the four months of the year in which Finance would receive *1053 applications for tax benefits. Notwithstanding this advice, the application papers were left at Finance.
According to Irving Kissin, who had been Beekman’s attorney, and who testified at trial, Mr. Finkelstein called to say that he (Finkelstein) could not be of further assistance. Mr. Kissin however continued to believe that it was still possible for the tax exemption to be granted retroactively.
Mr. Kissin also testified that prior to the submission of the letter of May 19, he had a conversation with Mr. Finkelstein during which the prospect of granting the application by remission was discussed. Mr. Finkelstein could not recall such a conversation.
Toward the end of June or beginning of July, Mr. Finkelstein again called Mr. Kissin to ask him to remove the application from Finance and resubmit it in July. This time the papers were picked up and refiled on July 31, 1980. Mr. Finkelstein stated that the letter of May 19 was returned with the rest of the application; Mr. Kissin denied the return of this letter.
In the beginning of October, 1980, Mr. Kissin’s associate received a letter from Finance dated October 7, 1980. The letter granted a tax abatement beginning on October 1, 1980. It also granted an exemption of “$0” with no date of commencement. In other words, no exemption was granted for the fiscal year starting on July 1, 1980. This article 78 proceeding was instituted on December 31, 1980.
No other written correspondence was sent to Beekman’s attorney.
Evidence was introduced at trial pertaining to the so-called doctrine or act of remission. According to Mr. Finkelstein, under certain circumstances tax benefits can be granted by remission and hence become effective after a pertinent deadline has elapsed. Specifically, Mr. Finkelstein testified, that if warranted, a certificate of approval dated May 12 could be deemed to be dated April 30, so that a tax abatement and a tax exemption would become effective the following July 1. Usually authorization is obtained from HPD before remission is granted. Mr. Finkelstein went on to testify that remission, with respect to exemp *1054 tians, has been invoked generally thousands of times and in J51 situations a few times. He also agreed that it was conceivable that remission could have been applied to this case. Furthermore, he believed that there were instances where remission occurred even though the certificate of approval was dated perhaps months after the deadline, not just days.
Significantly, Mr. Finkelstein stated that there was no written advice to Beekman’s attorney with respect to the application for J51 benefits effective July 1 because such application was neither denied nor granted; it was simply “pending.” Mr. Finkelstein said that he advised Mr. Kissin to take the application back because he could not accept an application that is submitted in May, since it is not one of the four months in which applications may be filed with Finance.
Under the CPLR, an article 78 proceeding must be commenced within four months after the “determination to be reviewed becomes final and binding upon the petitioner”. (CPLR 217.) It has been held that the mere passing of the last day permitted by law for the filing of applications for the correction of assessed valuations constitutes a “final determination” in the context of an article 78 proceeding to review the granting of a tax exemption. (Matter of Goldstein v Mills, 185 Misc 851, affd 270 App Div 930.) It has also been held that the expiration of the grievance period for challenging a real property assessment starts the running of the four-month limitation period. (Matter of Drelich v Kahn, 60 Misc 2d 227.)
However, as easy as it would be for the court to decide that a final determination occurred on either April 30, 1980 (the last day for filing), or July 1, 1980 (the day the tax benefits were to be in place), the facts of this case demand a different result. At the very least an ambiguous situation had been created by the indecisive actions of Finance. An inference may be drawn that the possibility for the granting of tax relief by remission was raised in discussions with Beekman’s attorney. Having allowed this impression to come into being, Finance, whenever it decided remission was not warranted, should have taken those clear and unqualified steps necessary to disabuse *1055 Beekman of any belief in the prospect for a favorable outcome to its request. Finance took no such action.
What Finance, through Mr. Finkelstein, did was to make two or more phone calls to Beekman’s attorney while allowing the application to remain on file. The substance of the first phone call is in dispute. It is not necessary to rule on what was said however, because this court holds that a phone call is not the formal notice necessary for a “final determination.”
Although there is no requirement that for the purposes of CPLR 217, a “final determination” be in writing, notice must be reasonably expected to apprise an applicant of the administrative body’s decision. (See Matter of Kaufman v Anker, 66 AD2d 851; Matter of Klein v Police Comr. of City of N. Y., 99 Misc 2d 186; Matter of Kordal v Niesley, 66 Misc 2d 781.) A phone call, whose content is many times subject to disparate interpretation, is not such reasonable notice.
Moreover, by permitting the application to remain on file, respondents maintained the ambiguous situation it had created. The Court of Appeals has stated that, in drafting what is now CPLR 217: “every attempt was made to avoid putting a party or his counsel in a position of having to guess when a ‘final and binding’ determination had been made. The burden was put on the public body to make it clear what was or what was not its determination. In dealing with this dilatory defense the courts should resolve any ambiguity created by the public body against it in order to reach a determination on the merits and not deny a party his day in court.” (Matter of Castaways Motel v Schuyler, 24 NY2d 120, 126-127; see, also, Mundy v Nassau County Civ. Serv. Comm., 44 NY2d 352; Matter of Salvation Army v Commission of Assessment & Taxation of Vil. of Port Chester, 110 Misc 2d 1036.)
Thus, the court is constrained by the above language to hold that, commencing on May 19, 1980, Beekman had a pending application on file with Finance. That pendency did not expire until direct and formal communication from Finance was received by the authorized agent named on the certificate of approval submitted as part of the application, i.e., Beekman’s attorney. This did not occur until the *1056 receipt on or about October 8, 1980 of Finance’s October 7 letter. We infer that the letter was received on October 8. It was at this time that a final determination was rendered.
Respondents raise several interesting points in contravention of this conclusion. First, respondents cite the fact that Beekman, sometime late in June or early July removed its application from Finance. It was subsequently refiled on July 31. Respondents argue that this refiling was a request for a redetermination, which cannot extend the commencement of the Statute of Limitations. (Matter of Alonzo, Inc. v Levitt, 73 AD2d 741; Matter of Johnston v Curry, 68 AD2d 991; Matter of Fiore v Board of Educ. Retirement System of City of N. Y., 48 AD2d 850, affd 39 NY2d 1016.) Respondents’ logic in this regard is deficient. Prior to Beekman’s resubmission of its application, no final determination had in fact been made. Thus, there could be no redetermination. In addition, Mr. Finkelstein testified that the resubmission was merely required because an application could only be processed in one of four filing months, not because the application had been denied.
A tax bill with respect to the property in question was introduced in evidence. The following name and address appeared on the bill: 301-52 Tenants Corp., % Wm. B. May Co., Inc., 3 West 57 St., New York, N. Y. 10019. The owner of record of the property is listed on the bill as 391-52 Townhouse Corp. (sic), while the block and lot numbers of the property are the same as those appearing on the petition in this proceeding.
No tax abatement or exemption was indicated on the bill as would have been the case had the benefits been in place. Therefore, respondents contend that this bill constituted a final determination that Beekman’s application had been denied.
This contention must fail for two reasons. Although the relationship between Beekman and 301-52 Townhouse Corp. was not clearly established at trial, from the pleadings it can be inferred that 301-52 Townhouse Corp. is an entity to which co-operative apartments were sold by Beekman. However, no evidence was offered to prove that the actual applicant for J51 relief (Beekman) or the applicant’s designated agent (Mr. Kissin), received the tax bill. *1057 The only testimony concerning the matter was to the effect that tax bills are mailed to the addressee appearing thereon and no proof was introduced that established a relationship between Beekman and the Wm. B. May Co., Inc.
More importantly, with Finance’s help, the impression had been created that the application was still pending in July; the outcome of a pending application could not be expected to appear on the tax bill.
This court concludes that direct communication with a designated agent is the minimum requirement for a final determination in this case. (See Matter of O’Neill v Schecter, 5 NY2d 548; Matter of Kaufman v Anker, supra; Matter of Hanmer v Tofany, 31 AD2d 782; Matter of Klein v Police Comr. of City of N. Y., supra; Matter of Kordal v Niesley, supra.) Direct and explicit communication was not forthcoming until the letter of October 7 was mailed to Beekman’s attorney. It is the holding of this court that such letter was the final determination of Beekman’s application.
In so holding, the court notes that it is hornbook law that the burden of proof was on respondents to demonstrate that these proceedings were not timely commenced. (Siegel, New York Practice, § 34.) That burden has not been met, and indeed the evidence preponderates in petitioners’ favor. (Cf. Fisch, New York Evidence [2d ed], § 1087.) Therefore, petitioners’ compliance with the requirements of the J51 program should be determined on the merits.